## VALIDITY OF THE EXECUTION OF A WILL.

Circuit Court of Cuyahoga County.

EDNA GIDDINGS v. GEORGE SCHMUCK, AS EXECUTOR OF THE LAST
WILL AND TESTAMENT OF WILLIAM GABLE, DECEASED, ET AL.

Decided, May, 1912.

*Wills—Signature to Will.*

A will is signed at the end thereof, as required by the statute, when
the signature of the testator appears after the will, just below a
line intended in a blank form for the signature and in a blank
space in the attestation clause intended for the name of the tes-
tator as part thereof, said name also appearing in the attestation
clause, in the handwriting of the scrivener of the will, just below
the testator's signature in such position as to be read as a part
of said attestation clause. *Sears* v. *Sears*, 77 O. S., 104, dis-
tinguished.

*C. W. Toland* and *H. G. Shaibley,* for plaintiff.
*M. P. Mooney,* contra.

MARVIN, J.; WINCH, J., and NIMAN, J., concur.

A writing purporting to be the last will and testament of Wil-
liam Gable, deceased, was admitted to probate by the probate
court of this county on the 26th day of January, 1909. Proceed-
ings were brought in the court of common pleas to set aside this
will, with the result that on motion, the court directed the jury
to find a verdict that the purported will was in fact the will of
said deceased. It is to reverse this judgment that the pres-
ent proceeding is prosecuted.

The parties here are as they were in the court below, the de-
fendants being the proponents of the will.

Pursuant to the provisions of Section 12085 of the General
Code, the proponent offered in evidence the will, or order of pro-
bate, including the testimony taken in the probate court by the
defendant's witnesses, and rested. Thereupon the contestors of
the will moved the court to direct a verdict that this writing was
not the will of said testator. This motion was overruled, and

then the motion, already mentioned, was made by the proponents of the will that a verdict be directed finding for the proponents.

The only question in the case is as to whether the writing claimed as a will was executed in accordance with Section 5916, which was the statute in force at the time this will purports to have been executed. That section requires that wills, except nuncupative wills, "shall be signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of such party by two or more competent witnesses who saw the testator subscribe or heard him acknowledge the same."

The present statute, General Code, 10505, has practically the same provision, although the wording is somewhat different, but this case must be governed by the statute in force at the time the will was executed, although, as already said, the present statute is practically the same, and if the case were to be governed by the present instead of by the former statute, the result would be the same.

The real question in the case is whether this writing was signed at the end thereof by the maker.

The attesting witnesses swore in the probate court that it was signed by William Gable in their presence, and that all the other formalities were complied with as the statute requires, and we are brought to the inquiry whether the writing itself contradicts this evidence.

The writing is in the usual form of a will, making various bequests and nominating an executor, and then is followed by these words: "In testimony whereof, I have set my hand to this my last will and testament at Cleveland this 22day of September, in the year of our Lord 190Eight."

Then follows a blank line, thus: "......................" evidently intended to indicate where the testator should sign, but there is no writing on this line. Then follows the following in print:

"The foregoing instrument was signed by the said .........
........... in our presence, and by him published and de-

clared as and for .... will and testament, and at .... request and in .... presence, and in the presence of each other, and we hereunto subscribe our names as attesting witnesses at ........ this .......... day of .................. A. D. ..........''

And then follows in writing the names of two apparently attesting witnesses, they being the names of the witnesses who testified as to the execution of the will in the probate court at the time it was admitted to probate.

Filled in the first blank in this printed form appear, in writing, the words, ''William Gable,'' and then, almost immediately under these written words and between the first and second lines of this printed form, appear again in writing the words, ''William Gable,'' and the other blanks are filled out with the pronouns ''him'' and ''his'' respectively and after the word ''at'' is the written word ''Cleveland,'' and after the word ''this'' is ''22,'' and after the words ''day of,'' is written the word ''September,'' and after the letters ''A. D.,'' the figures ''1908.''

Since it appears by the testimony of the attesting witnesses taken in the probate court, that they saw William Gable sign this will, it follows, since there is no place where his name appears that could be a signature to the will, except the two places already indicated, that William Gable either wrote his name in the blank left in the printed form on the first line, or he wrote it at the place where it appears between the first and second lines; one or the other of these must be his signature. It is difficult to present in words just how this appears on the instrument itself, but it is clear, by an inspection of the instrument, that in one place where this name ''William Gable'' appears, it is intended to be read in connection with the printed form, and that it is so intended to be read in but one place in such printed form. If the words were erased where they appear in the first line, there can be no doubt that those words, as they appear between the two printed lines, would be read in connection with the first line, and so read, the words as they appear in the first line, if restored, could mean nothing but a signature of William Gable; but if they are left in the first line, then the place where they appear between the two lines

must mean nothing except that they are the signature of William Gable, so that in either case, we have an instrument, in form a will, and following that we have the signature of William Gable.

From an inspection of the handwriting, we have little doubt that the words "William Gable" appearing in the first line were written by him. The second place where the name appears seems to be in the handwriting of him who wrote out the body of the will, which leads us to the conclusion that the words written in the first line of this form for the attesting witnesses were written by William Gable, and we still have the complete sentence for the attesting clause. We think, therefore, that this writing is clearly shown to have been signed by William Gable at the end thereof.

It is urged on the part of the plaintiff in error that the case must be governed by the case of *Sears* v. *Sears*, 77 O. S., 104. In that case the name of the testator, Arminda S. Nicholson, appears in the same place as the name of William Gable appears in the first line in the attestation in the case before us, and it was held, although it was shown that this name was written by the testator, that it was not a signature at the end of the will. In speaking of this the court said, at page 127:

"The attestation clause signed by the witnesses, recites that 'the foregoing instrument was signed by the said Arminda S. Nicholson in our presence,' but this does not change the fact, and in the absence of a signature, is without legal effect. If a scrivener had prepared the will and had written her name where it appears in the attestation clause, her name there would have been merely *descriptio personae*; and when it is shown that the testatrix was her own scrivener, the natural presumption is that it was so intended; and even if the fact was that the testatrix wrote her name there, intending by that act to sign her will, still her signature would not be at the end of the will, and her intention could not have the effect of transposing it."

It must be remembered that in that case the name appeared but once, and necessarily, therefore, was to be read as a part of the attestation clause, whereas, here it appears twice, and the name can be read but once as a part of the attestation clause.

We think, therefore, that it materially differs from the case cited in that the attestation clause is complete without reading what purports to be the signature, and this coming after the will, as already said, we hold to be a signing at the end of the will, and the judgment of the court of common pleas is affirmed.